**Glenn L. ANDERSON et al., Plaintiff,**

v.

**PHOENIX PRODUCTS COMPANY, Defendant.**

**Civ. A. No. 5071.**

United States District Court, E. D. Wisconsin.

Sept. 21, 1954.

Whyte, Hirschboeck & Minahan, Milwaukee, Wis., for plaintiff.

Ira M. Jones, Milwaukee, Wis., for defendant.

TEHAN, Chief Judge.

This is a suit for infringement of patent 2,479,993, which was issued to the plaintiff, Glenn L. Anderson, on August 23, 1949 and which relates to a cardboard collar support of the type which laundries insert into the collar portion of a freshly laundered shirt to prevent the collar from being crushed after it has been ironed. After the action was filed, Anderson assigned the patent to Hubbs & Howe Company, a New York corporation, which was then impleaded as an additional party plaintiff. Plaintiffs seek injunctive relief and an accounting and damages.

 The defendant filed a counterclaim for a declaratory judgment of invalidity and non-infringement. A further element of the counterclaim for damages on account of unlawful interference by the plaintiffs with defendant's business must be considered as abandoned by reason of failure to present any supporting proof thereon. In regard to the question of invalidity and non-infringement, defendant's two principal contentions in its answer and counterclaim are: (1) the patent in suit is invalid for want of invention and anticipation in view of the prior art, and (2) the invention covered by the patent in suit was in public use within the United States more than one year before December 5, 1947, the date on which the application for it was filed.

Prior to the trial of the action, defendant moved for summary judgment based on the two above-mentioned grounds. The Court ruled that there was an issue of fact on the question of public use and denied the motion in that respect, but reserved its ruling on the question of anticipation for the reason that the Court believed it could more understandingly pass upon that point with the background that the trial of the action might reasonably be expected to supply.

The Anderson invention as described in plaintiffs' brief, comprises a generally elongated strip of flexible material, such as paperboard, having a width substantially equal to the height of the shirt collar, and two elongated slots extending inwardly from the lower edge of the strip in converging relationship, but terminating in spaced relation with that portion

of the strip above and outwardly of the slots flexed and fitting within and in engagement with the inner wall of the shirt collar and the portions of the strip below the slots, commonly referred to as the "wings", extending outwardly from the opposite sides of the intermediate portion of the strip and positioned vertically between the back and front of the garment at opposite sides of the attachable ends of the collar and extending transversely of the garment to prevent dislodgment of the support and to space the collar of the garment from the back of the garment to prevent curling of the collar tips. The device is applicable to both the new-shirt business and the laundered-shirt business.

There can be little doubt that the defendant's device fits this description, but defendant contends that Anderson did not invent it.

Plaintiffs rely strongly on the principle that the issuance of the patent creates a presumption of its validity, and stress the fact this judicial doctrine has now been enacted into statutory law by the Congress. Title 35 U.S.C.A. § 282 provides in part as follows:

"A patent shall be presumed valid. The burden of establishing invalidity of a patent shall rest on a party asserting it."

In addition, plaintiffs claim a marked degree of commercial success for the Anderson device and contend that defendant's copying of the device strengthens the presumption of validity of the patent in suit.

Testimony was introduced to show that the laundry industry in this country, consisting of some six or seven thousand individual laundries, represents an investment of over a billion dollars and averages around a billion dollars in gross sales each year. Around a billion and a quarter shirts are laundered by the industry annually. The shirt business is important not only in its total volume, but because of the margin of profit on this part of the laundry business and because the other laundry business tends to follow the shirt business. The appearance of the shirt collar is particularly important because it is the part which shows when the shirt is being worn and thus constitutes the "front" or "display window" of the laundry business. Because the appearance of the collar is so important, collar supports of some type have been in use since the time that collar-attached shirts came on the market, about 1922 or 1923, the earliest such supports being ordinary elongated square-cornered pieces of chipboard such as plaintiffs' Exhibit 8.

The requirements of a good collar support are that it must be easy to insert, it should give support and lift the collar so that the wings of the collar do not get crushed, and it should not fall out once it has been inserted into the collar.

The defendant has introduced a number of prior patents to show the state of the art, but places its main reliance on three of these, Steele Patent No. 1,879,-918, issued September 27, 1932, Guyer Patent No. 2,377,776, issued June 5, 1945, and Chadwick Patent No. 2,334,068, issued November 9, 1943. The Anderson device and those of the three prior patents are extremely simple. They do not involve a complicated and highly technical mechanical structure such as would necessitate expert testimony to interpret the drawings to determine what are the facts concerning the construction of the device shown therein and the mechanics of its operation.

Structurally, the collar supports described by each of these patents are closely similar. The Guyer patent shows a rectangular cardboard or fiberboard strip, similar both in shape and size to that shown in the patent in suit, and having slots extending inwardly from one edge of the material and converging toward the intermediate portion of the strip. The Guyer structure differs slightly, in that the slots define a long narrow area parallel to the length of the strip and having rounded end portions, whereas the slots of the patent in suit define a triangular area having pointed ends. While the Anderson collar support

is inserted inside the neck band of the shirt, however, the Guyer collar support is intended to be inserted between the folds of the collar. The Steele patent shows a dual type of collar support which physically is about twice the size of the Anderson and Guyer structures; the lower half of Steele is substantially the same structure as Anderson and Guyer and is intended to be inserted between the collar and neckband; the upper half of Steele is intended to fold over and be positioned inside the collar-band as a support therefor.

Plaintiffs state that the Anderson invention does not consist of the strip of paper alone but the combination of the strip of paper inserted in a specific manner in the collar portion of a collar-attached shirt. Pointing out that both Guyer and Steele taught that their slitted structures were to be inserted between the collar and neckband, the plaintiffs claim that the defendant distorts and modifies these devices when it demonstrates that Guyer and the lower one-half portion of Steele perform all the functions of Anderson when positioned inside the neckband.

■ It is the structure defined by the claims, however, and not the use to which that structure is or may be put, which determines the validity or invalidity of the patent in suit.

> "Since all the claims are structural claims, we think they must be tested, in the light of the prior art, by the structure which they define, and *not by the use which is to be made of the completed device,* and we are unable to discern wherein there are in appellants' combination as described any modifications of the structural features of the cited art which may properly be held to involve invention as distinguished from mechanical skill." In re Beplate, 1935, 77 F.2d 506, 508, 22 C.C.P.A., Patents, 1232. (Emphasis added.)

In any event, plaintiffs' contention, that the prior art patents did not and were not intended to function or perform in the same manner as the Anderson device, cannot be sustained with respect to the Chadwick collar support. The patent to Chadwick shows a collar support comprising a rectangular piece of cardboard having wings (23) defined by diverging slits extending inwardly from one edge of the strip, which wings extend forwardly when the collar support is bent for insertion into the neckband of a collar. The wings of the collar support of the patent in suit constitute a mere reversal of the wings in Chadwick, being defined by slots or slits which converge instead of diverge. Thus the Chadwick collar support is substantially the same, structurally, and almost identical in function, as the Anderson collar support. In his specifications (Column 1 of page 2, lines 24–36) Chadwick states:

> "The collar piece is positioned vertically and assumes a circular position in the collar band. The curved segment is folded along the scored line to extend horizontally rearwardly. As the collar supporting piece is formed into a circular shape, the arms extend forwardly as illustrated in Figure 5. When the piece is inserted into its position in the collar band, these arms are slipped under the front of the collar. The arms serve a dual purpose in that they provide a firm base on which the front of the collar rests and they anchor the collar supporting piece in its position in the collar band."

■ Plaintiffs' expert witness, Yeomans, a consulting engineer, testified that throughout the Chadwick specification the reference is that the wings or projections designated by the reference character 23, act as a base for supporting the collar, and that their principal function is to retain the collar support from being thrown out of the collar. He emphasized that there was no suggestion in the Chadwick patent that the projections should lift the collar of the shirt in which it is inserted. While the specific function of lifting the collar may not have been mentioned in the Chadwick teachings,

nevertheless, one does not have to be an expert to realize that the wings on the Chadwick collar support perform the function of lifting the collar in the same manner as the Anderson device.

"The law is well settled that the mere addition of the statement of the function of an element does not necessarily make that claim patentable over one in the prior art where the same structure is described without the functional element." In re Clark, 1938, 97 F.2d 628, 631, 25 C.C.P.A., Patents, 1317.

Section 103 of the new Patent Act of 1952, Title 35 U.S.C.A. § 103, which establishes the test for invention provides:

"A patent may not be obtained * * * if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

In the opinion of this Court, the differences, if any, between the Anderson device and those of the prior art, are such as would undoubtedly have been obvious at the time to a person having ordinary skill in the art to which the subject matter pertains. Collar-attached shirts had been on the market for no more than 20 to 25 years. Almost contemporaneously with the advent of collar-attached shirts, collar supports of various designs began to appear. In the words of the Court in the case of Ruben Condenser Co. v. Copeland Refrigeration Corp., 2 Cir., 1936, 85 F.2d 537, 541, certiorari denied 300 U.S. 665, 57 S.Ct. 508, 81 L.Ed. 873,

" * * * The setting here is a familiar one; at about the same time several inventors began to supply the same need; they naturally varied in their answers and one may be better than the others. But there is little antecedent reason for saying that any of such spontaneous outcroppings required unusual abilities, or that a successful device was not sure to be soon found. That is quite a different picture from that of a need long existing, with inconclusive answers spread throughout its duration, finally capped by success. * * *"

■ While the plaintiffs claim, and in fact did achieve a degree of commercial success, the figures showing sales of millions of collar supports are somewhat misleading. Yonke, the manager of the model laundry operated by the American Institute of Laundering, testified that the power laundries in the United States did about 90% of the business, and he estimated that between 1,200,000,000 and 1,300,000,000 shirts were laundered each year. In 1950, when both the plaintiff Anderson and the defendant Phoenix did their biggest business in collar supports, the plaintiff sold 30,800,000 of his patented collar supports, and the defendant sold 25,917,000 of the alleged infringing device, at approximately $1.50 per thousand. Taking 1,000,000,000 collar supports a year, which the Court believes to be a fair estimate of the number used by commercial laundries in this country, in their biggest year, plaintiffs did about $45,000 in gross sales or about 3% of the business. If defendant's sales of the alleged infringing device are added thereto, it still represented less than 6% of the collar supports sold in the United States. In any event, while it is true that in a doubtful situation, evidence of commercial success is important, commercial success without invention will not make patentability. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162.

"The grant of the patent, the public acceptance of the article, its copying by plaintiff, plaintiff's seeking an improvement patent thereon, economy of production, expert testimony to the effect that it was not obvious to those skilled in the art,

these are all evidence tending to show invention. But they do not conclusively indicate invention as defendant urges. Such evidence, when doubt exists, may resolve that doubt in favor of him who submits it, but where as here there is a clear-cut case of lack of invention such evidence cannot successfully controvert it." Ryan Distributing Corporation v. Caley, 3 Cir., 1944, 147 F.2d 138, 142.

It is the conclusion of this Court that Anderson was anticipated and that if he was not fully anticipated, the prior art, of which he was bound to take notice, was such that any skilled person in the art could have accomplished the same result.

Defendant's second principal contention is that the invention covered by the patent in suit was in public use within the United States more than one year prior to December 5, 1947, the date on which the application for it was filed.

Under date of August 2, 1950, Anderson made answers to certain interrogatories touching upon the dates of conception, first reduction to practice, first public demonstration and first sale which were at variance with the answers given by him orally at the taking of his deposition on October 24, 1951. Defendant urges that when a party makes conflicting statements under oath the Court should accept that statement that is unfavorable to him. This principle, if followed in this case, would result in a finding that the invention was in public use more than one year prior to December 5, 1947, the date of application.

This was one of the two points relied on in defendant's motion for summary judgment based on the pleading, interrogatories and depositions. In denying the motion this Court observed that a material question of fact existed and the plaintiffs could not be foreclosed from explaining at a trial the inconsistent statements.

At the trial this Court had the opportunity to observe Anderson at close hand. His explanation of the discrepancy as being due to confusion and superficial examinations of rather sketchy records we find credible. We therefore find that the device shown by Anderson Patent No. 2,479,993 was not publicly used by Glenn L. Anderson, the patentee, or on sale by said Glenn L. Anderson more than one year prior to the filing of his application for Letters Patent.

Defendant's counsel shall prepare findings of fact and conclusions of law in accordance with this Opinion and submit them to counsel for plaintiffs.